**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NOEL KOENKE, | Case No. 19-4731 |
| Plaintiff, | |
| v. | |
| SAINT JOSEPH'S UNIVERSITY, | |
| Defendant. | |

**O R D E R**

      **AND NOW,** this _____ day of _____, 2020, upon consideration

of the Motion of Defendant, Saint Joseph's University, to Dismiss Plaintiff's Complaint (ECF

No. 5), and Plaintiff's Response in Opposition thereto, as well as the Briefs submitted in support

thereof, it is hereby **ORDERED** and **DECREED** that the Defendant's Motion to Dismiss is

**DENIED.**

                            BY THE COURT:

                            _____

                            NITZA I. QUIÑONES ALEJANDRO, USDCJ.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

NOEL KOENKE,

                     Plaintiff,

        v.

SAINT JOSEPH'S UNIVERSITY,

                    Defendant.

Case No. 19-4731

## [ALTERNATIVE] ORDER

**AND NOW,** this _____ day of _____, 2020, upon consideration of the Cross-Motion of Plaintiff, Noel Koenke, for an Immediate Interlocutory Appeal, and any Response thereto, it is hereby **ORDERED** and **DECREED** that the Plaintiff's Cross-Motion is **GRANTED** as to the following controlling question of law, over which there is substantial ground for a difference of opinion, the resolution of which would materially advance the ultimate termination of this matter:

    1.      Whether discrimination because of "sexual orientation" constitutes discrimination because of "sex" under Title IX of the Education Amendments of 1972.

                    BY THE COURT:

                    _____

                    NITZA I. QUIÑONES ALEJANDRO, USDCJ.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

NOEL KOENKE,

                         Plaintiff,

        v.

SAINT JOSEPH'S UNIVERSITY,

                       Defendant.

Case No. 19-4731

**RESPONSE OF PLAINTIFF, NOEL KOENKE, IN OPPOSITION TO THE MOTION OF
DEFENDANT, SAINT JOSEPH'S UNIVERSITY, TO DISMISS PLAINTIFF'S COMPLAINT
(ECF NO. 5), AND, IN THE ALTERNATIVE, PLAINTIFF'S CROSS-MOTION FOR IMMEDIATE
INTERLOCUTORY APPEAL**

      Plaintiff, Noel Koenke, hereby submits and files the instant Response in Opposition to

the Motion of Defendant, Saint Joseph's University, to Dismiss Plaintiff's Complaint (ECF No.

5), and hereby incorporates by reference all of the arguments in the accompanying Brief as if the

same were more fully set forth herein at length.

      **WHEREFORE,** Plaintiff, Noel Koenke, respectfully requests that this Honorable Court

deny the Defendant's Motion to Dismiss for the reasons contained herein, and in the alternative,

grant Plaintiff's Cross-Motion for Immediate Interlocutory Appeal if necessary.

                Respectfully submitted,

                **THE LAW OFFICES OF ERIC A. SHORE, P.C.**

DATED:  01/17/2020       */s/ Justin F. Robinette, Esquire*_____
                    JUSTIN F. ROBINETTE, ESQUIRE
                    Attorney I.D. No. 319829
                    THE LAW OFFICES OF ERIC A. SHORE, P.C.
                    Two Penn Center
                    1500 JFK Boulevard, Suite 1240
                    Philadelphia, PA 19102
                    Phone: (215) 944-6121

Fax: (215) 944-6124
JustinR@EricShore.com

*Attorney for Plaintiff, Noel Koenke*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NOEL KOENKE,<br><br>                     Plaintiff,<br><br>          v.<br><br>SAINT JOSEPH'S UNIVERSITY,<br><br>                     Defendant. | Case No. 19-4731 |

**BRIEF IN SUPPORT OF THE RESPONSE OF PLAINTIFF, NOEL KOENKE, IN OPPOSITION TO THE MOTION OF DEFENDANT, SAINT JOSEPH'S UNIVERSITY, TO DISMISS PLAINTIFF'S COMPLAINT (ECF NO. 5), AND, IN THE ALTERNATIVE, PLAINTIFF'S CROSS-MOTION FOR IMMEDIATE INTERLOCUTORY APPEAL**

Plaintiff, Noel Koenke, hereby submits and files the instant Brief in Support of the Response in Opposition to the Motion of Defendant, Saint Joseph's University, to Dismiss Plaintiff's Complaint (ECF No. 5), and in the alternative, Plaintiff files the instant Cross-Motion for Immediate Interlocutory Appeal, and in support thereof, states as follows:

**I.     MATTER BEFORE THE COURT**

Motion of Defendant, Saint Joseph's University, to Dismiss Plaintiff's Complaint (ECF No. 5), Plaintiff's Response in Opposition thereto, and if necessary, Plaintiff's Cross-Motion for Immediate Interlocutory Appeal.  Oral argument is respectfully requested.

**II.     COUNTER-STATEMENT OF FACTS**

Plaintiff, Noel Koenke (hereinafter "Ms. Koenke"), was employed by Defendant, Saint Joseph's University, as the Coordinator for Liturgy and Music; she performed commendably and exceeded expectations during her tenure; and was promoted to Assistant Director for Music and Worship.  See Pltf.'s Compl., ECF No. 1, at para. 12.  Ms. Koenke "identifies as a lesbian female" in the Complaint.  See id. at para. 11.

During her employment with Defendant, Ms. Koenke was subject to what she characterizes in her Complaint as "hateful and harassing conduct" on account of "sexual harassment" and "gender stereotyping," which Ms. Koenke alleges occurred continuously throughout her employment.  See id. at para. 16.  Ms. Koenke alleges she was subject to constant "harassment and abuse" to "remain closeted" during her employment.  See id. at para. 16(j).  Ms. Koenke alleges that this "harassment and abuse [she] experienced in being required to remain closeted" caused "fear of the negative consequences or repercussions if [Ms. Koenke] was suspected or found out."  See id.  Ms. Koenke points to essentially a near-constant barrage of incidents which required her to remain in the closet during her employment.  Ms. Koenke alleges such burdensome conditions caused her to attempt suicide on account of the above harassment before the point at which Ms. Koenke quit her employment.  See id. at para. 16(j).

Ms. Koenke also alleges that she could not be fully open inside or even *outside of work* because Ms. Koenke's supervisor went so far as to sit her down and demand she "should delete her current Facebook account, create a new Facebook account, but not add any of the employees of Defendant's University to be Plaintiff's Facebook friends."  See Pltf.'s Compl., ECF No. 1, para. 16(a).  Ms. Koenke's supervisor, who was responsible for the harassing conduct, is the University's Deputy Title IX Coordinator, and is responsible under this umbrella for all of the University's students, with the exception of athletics.  See id. at para. 9.

Within the limitations period, in November 2017, Ms. Koenke requested that these onerous conditions on her be lifted.  See id. at para. 16(ii)-(jj).  Defendant again directly refused.  See id.  Ms. Koenke accordingly quit her employment.  See id. at para. 16(ii)-(mm).  Defendant requested Ms. Koenke sign a Non-Disclosure Agreement stating that Ms. Koenke was required to keep the agreement "completely confidential" including to "local, state, or federal agencies,

members of the press and media, present and former officers, employees, and agents of Saint Joseph's, and other members of the public," about, *inter alia*, "the substance or the existence of any belief that Saint Joseph's allegedly engaged in any unlawful or unfair conduct" toward Ms. Koenke.  See id. at para. 16(kk).  Ms. Koenke refused to sign the agreement and filed the instant lawsuit.  See id.

Defendant has filed a Motion to Dismiss Ms. Koenke's lawsuit alleging that it treated her in such a manner allegedly because "she married a woman while working at Saint Joseph's." See Def.'s Br., ECF No. 5-1, at p. 1.  Defendant recasts and attempts to characterize these incidents of harassment toward Ms. Koenke as "communications of its expectations of discretion and ***professionalism*** to her."  See Def.'s Br., ECF No. 5-1, at p. 20 (emphasis added). [1] Respectfully, being gay doesn't impact a person's "professionalism."  Ms. Koenke contends this is an invidious stereotype rooted in sex bias, and unconnected to any actual religious belief.  The University voluntarily opened the job to Ms. Koenke who is an LGBT person.

For all of the reasons that follow, Ms. Koenke should be permitted a full and fair opportunity to establish through discovery what she has characterized in her Complaint as "hateful and harassing conduct."  This is especially true in light of the fact that the Defendant takes no direct position and offers no direct religious justification for certain strains of conduct in this case, as explained more fully below.  Therefore, Ms. Koenke respectfully requests that this Court deny Defendant's Motion to Dismiss, and permit Ms. Koenke the benefit of discovery into certain strains of this case in light of Ms. Koenke's allegations in the Complaint.

---

[1] Defendant, Saint Joseph's University, points out, in its Motion to Dismiss, that Ms. Koenke alleges disparate treatment in that she was treated "unlike ***straight*** coworkers."  See Def.'s Br., ECF No. 5-1, p. 24 (emphasis added). Respectfully, "straight" is an offensive word which creates a barrier and should not be used here.

III.   **LEGAL ARGUMENT**

A.   **The Statute of Limitations is an Affirmative Defense Which Should Not Be Resolved Here on a Motion to Dismiss, As Ms. Koenke Does Identify Conduct Which Occurred Within the Limitations Period, Such That the Continuing Violation Doctrine Applies.**

Under these circumstances, Ms. Koenke should not be required to defeat the statute-of-limitations defense, which is an affirmative defense, on a motion to dismiss.  Rather, it is clear from the face of Ms. Koenke's Complaint that the complained-of conduct actually continued up until the point of Ms. Koenke's constructive discharge in November 2017.  Therefore, the conduct did occur within the limitations period such that the continuing violation doctrine applies here.

Affirmative defenses, including specifically the statute of limitations, should generally be asserted in a responsive pleading.  See Fed. R. Civ. P. 8(c)(1).  However, it is well-recognized in the Third Circuit, but in limited circumstances _only_, that the statute-of-limitations affirmative defense may be raised on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), but _only_ if the defense is clear from the face of the complaint or, in other words, "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  Bethel v. Jendoco Const. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978).  In Bethel, the Third Circuit concluded that "the district court could not properly dismiss . . . claims on a Rule 12(b)(6) motion," based on the statute of limitations, "for if [the plaintiff's] assertions are true, as we are obliged to presume they are at this stage, each of the discriminatory acts, by having been continued to the date of the filing of the complaint, would necessarily escape the bar of any statute of limitations."  Id.  In short, Bethel held that, "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule

12(b)(6)."  Id.; see also Hanna v. United States Veterans' Administration Hosp., 514 F.2d 1092,

1094 (3d Cir. 1975); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980).

Notwithstanding the above, Ms. Koenke *does* identify acts of harassment and

discrimination which specifically occurred within the two-year statute of limitations.  However,

Defendant contends that "Ms. Koenke does not allege that she suffered harassment or

discrimination *after* October 11, 2017."  See Def.'s Br., ECF No. 5-1, at p. 8 (emphasis in

original).  This is *not* accurate.

Within the limitations period, in November 2017, Ms. Koenke specifically requested that

the allegedly harassing and discriminatory conditions placed upon her be lifted moving forward.

See Pltf.'s Compl., ECF No. 1, at para. 16(ii)-(jj).  Ms. Koenke alleges Defendant again directly

refused this request in November 2017 and, accordingly, Ms. Koenke quit her employment.  See

id. at para. 16(ii)-(mm).  More specifically, Ms. Koenke clearly alleged in the Complaint that,

"On or about November 3, 2017, Ms. Eisenmann and [Koenke] met, and [Koenke] stated to Ms.

Eisenmann that [Koenke] did not wish to return to work under the terms and conditions being

***currently imposed***, or words to that effect."  See id. at para. 16(ii) (emphasis added).  Ms.

Koenke also clearly alleged in the Complaint that, at this time, it was made clear to her that she

"could not return unless on the terms and conditions imposed" at the present in November 2017,

and from that point moving forward.  See id.  Ms. Koenke also alleges that the continuous

harassment she faced culminated in her constructive discharge which was within the limitations

period also.  Ms. Koneke has therefore clearly alleged acts of discrimination and harassment

occurring within the limitations period.

Finally, Defendant correctly anticipates that Ms. Koenke intends to rely upon the

continuing violation doctrine in this case.  The continuing violation doctrine brings the prior

related acts of discrimination and harassment within the statute of limitations as well.  Taking the facts in the light most favorable to Ms. Koenke, which the Court should do at this stage, Ms. Koenke can plausibly allege discrimination and harassment leading up to November 2017 when the University imposed the conditions on Ms. Koenke at that point, moving forward, and leading up to Ms. Koenke's constructive discharge in November 2017.

Defendant incorrectly notes that "Ms. Koenke has not alleged a single discriminatory comment or action which occurred during the limitations period."  Def.'s Br., ECF No. 5-1, at p. 9.  This is simply _not_ accurate.  Ms. Koenke identifies actual instances of discrimination and harassment within the limitations period as stated above.  Ms. Koenke does _not_ simply allege ill effects of harassment during this timeframe.  Ms. Koenke alleges she directly complained and requested the onerous conditions be lifted, and the University refused, in November 2017.  Pltf.'s Compl., ECF No. 1, at para. 16(ii)-(jj).  The acts within the limitations period, and the acts outside of the limitations period, are sufficiently similar, in that they involve the same allegedly harassing conduct toward Koenke, _i.e._, the requirement that she remain in the closet.

### B.   The Ministerial Exception Does Not Apply to Sexual Harassment Such That Adjudication of This Case Would Not Implicate the Ministerial Exception, Free Exercise Clause, Establishment Clause, Nor Any Related Doctrine.

#### 1.   Ms. Koenke should not be required to defeat the ministerial exception on a motion to dismiss because the exception is an affirmative defense.

As above, a plaintiff is not required to plead around an affirmative defense.  See supra.  This is also true when the ministerial exception is raised as a defense to the claim.  See Garrick v. Moody Bible Institute, ___ F. Supp. 3d ___, 2019 WL 4674570 at *5-8 (N.D. Ill. Sept. 25, 2019).  The "ministerial exception is an affirmative defense upon which Defendants carry the burden of proof."  Yin v. Columbia Int'l Univ., No. 3:15-CV-03656-JMC, 2017 WL 4296428 at *3 (D.S.C. Sept. 28, 2017).

Ms. Koenke further points out that the seminal case upon which she relies to support her contention that her claims are not barred by the ministerial exception – Bollard v. California Province of the Society of Jesus, 196 F.3d 940 (9th Cir. 1999) – actually *reversed* the lower court's decision to dismiss the Bollard case on a motion to dismiss.  Bollard v. California Province of the Society of Jesus, 196 F.3d 940, 944-45 (9th Cir. 1999).

Accordingly, it is not appropriate to decide this matter on a motion to dismiss, but rather, the Court should permit Ms. Koenke the benefit of discovery into her claims before denying them.  Ms. Koenke should be permitted a full and fair opportunity to probe her claims that the Defendant committed what amounts to "hateful and harassing conduct," rather than having this issue simply being resolved against Ms. Koenke at the motion-to-dismiss stage.

> **2.**    ***Bollard v. California Province of the Society of Jesus* and *Garrick v. Moody Bible Institute* support the proposition that adjudication of this matter would not implicate the ministerial exception, Free Exercise Clause, Establishment Clause, nor any related doctrine.**

The ministerial exception, Free Exercise Clause, Establishment Clause, and any related doctrine under the First Amendment, do *not* preclude Ms. Koenke from stating a viable claim for sexual harassment.

There is *no* case decided by the Third Circuit, nor by any lower court that is part of the Third Circuit, which stands for the proposition that sexual harassment claims are precluded by these doctrines.  And, of the Federal circuit courts to address this issue, only the Ninth Circuit Court of Appeals, in Bollard v. California Province of the Society of Jesus, 196 F.3d 940 (9th Cir. 1999), has actually addressed whether the First Amendment precludes a minister from suing a church for sexual harassment, and this Circuit in Bollard actually ruled, to the contrary, that the First Amendment does *not* preclude such a scenario.  Bollard found that the plaintiff had stated

claims which were sufficient to overcome the defendant-church's Rule 12(b)(1) motion to dismiss.

Ms. Koenke even set forth directly in her Complaint, at length, that, pursuant to the seminal case of "Bollard v. California Province of the Society of Jesus, 196 F.3d 940 (9th Cir. 1999), the ministerial exception does not apply to sexual harassment and abuse, including of the type suffered by [Ms. Koenke] at the hands of her employer." See Pltf.'s Compl., ECF No. 1, at para. 14. Ms. Koenke further explained the Bollard case, and its impact on the instant matter, at length in her Complaint. See id. For example, Ms. Koenke explained at length in the Complaint, as follows:

> Defendant already selected Plaintiff for hire and chose Plaintiff as Defendant's representative. The University itself voluntarily opened the job to an LGBT person. There were not any terms or conditions, at this time, placed upon Plaintiff regarding Plaintiff's sexual orientation. Once having hired Plaintiff, Defendant does not have free rein to continuously discriminate against, harass, and abuse Plaintiff based on her sexual orientation with impunity. This is inconsistent with Defendant's own written policy prohibiting discrimination based on sexual orientation as being a form of 'sexual' harassment. The ministerial exception applies to the method of selecting clergy, and not sexual harassment or abuse, consistent with Bollard.

See Pltf.'s Compl., ECF No. 1, at para. 15.

However, of note, Defendant does not address the Bollard case sufficiently in its Motion to Dismiss. Bollard is the main case upon which Ms. Koenke relies both in her Complaint and in this Response. However, Defendant references the Bollard case only once in its Motion to Dismiss, in a footnote, in order to say simply that Bollard is "inapposite," without more. See Def.'s Br., at p. 24. The Bollard case does not appear anywhere else in Defendant's Motion to Dismiss, even though Bollard is a reported decision of a Federal circuit court, and a decision of significance here.

The Bollard case involved same-sex sexual harassment and constructive discharge. Bollard, 196 F.3d at 944.  In Bollard, the plaintiff, who was male, alleged that he had been sexually harassed by his supervisors while training to become a priest.  Id.  The plaintiff alleged he ultimately quit the Jesuit order before taking his vows on account of the harassment.  Id. Although Bollard is silent on whether either the harasser or the harrassee was LGBT, it appears that the male plaintiff alleged same-sex sexual harassment and abuse by his supervisors who were also male.  Respectfully, Bollard *does* involve a form of LGBT discrimination and harassment in that sense.

In Bollard, the district court dismissed the case under the First Amendment, but the Ninth Circuit Court of Appeals reversed and found there was no First Amendment bar to a sexual harassment claim.  Bollard, 196 F.3d at 944-45.  Bollard reasoned that permitting a religious organization to choose its representatives simply would not extend to a claim of sexual harassment.  Id. at 947.  The Bollard court held that the "rationale" for the ministerial exception "does not apply here, for the Jesuits most certainly do not claim that allowing harassment to continue unrectified is a method of choosing their clergy."  Id. at 944.  The Bollard case clearly recognized that, "Instead, constructive discharge in the context of Bollard's . . . sexual harassment claim functions only to signal his estimation of the severity of the harassment and to lay the foundation for including lost wages in a calculation of damages."  Id. Bollard held that neither the Free Exercise nor the Establishment Clause specifically barred the plaintiff's claims.  Id.  There was also a subsequent request for rehearing in the Bollard case which the Ninth Circuit denied.

9

The Bollard decision has remained viable after Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C., 565 U.S. 171 (2012), which did not involve sexual harassment, and which decision has not affected the holding in Bollard in any way.

Likewise, none of the ministerial exception cases cited by Defendant, in the footnote on page 20 of Defendant's Motion to Dismiss, address Bollard in any way either.  All of the cases cited in the footnote on page 20 of Defendant's Motion to Dismiss, besides Gellington v. Christian Methodist Episcopal Church, Inc., 203 F.3d 1299 (11th Cir. 2000), were actually decided *before* Bollard.  Gellington does not address Bollard in any way either as Gellington was decided just over two (2) months after Bollard.

While Defendant does not sufficiently address the Bollard decision, a reported decision of a Federal circuit court, which bears directly on the question at hand, the Defendant does appear to rely instead on a case called Demkovich v. St. Andrew the Apostle Parish, 343 F. Supp. 3d 772 (N.D. Ill. 2018).  Demkovich is a district court decision which is not binding on this Court.  Further, Demkovich was decided by a judge who engaged in his own analysis, on essentially a blank slate, recognizing that he was not bound by any decision in particular because of the dearth of binding authority, and the conflicting and unsettled nature of available authority on the subject overall.  Demkovich v. St. Andrew the Apostle Parish, 343 F. Supp. 3d 772, 783, n.10 (N.D. Ill. 2018).   Even the Demkovich case recognized, and Defendant acknowledges as much in its Motion to Dismiss, that, when it comes to sexual harassment claims, "there is no categorical bar to that narrow category of claims brought by ministers . . . ."  See Def.'s Br., at

10

ECF No. 5-1, p. 22 (citing <u>Demkovich</u>, 343 F. Supp. 3d at 785-86).  However, <u>Demkovich</u> is not

the only decision, nor the most recent decision, on this subject.2

Defendant also refers this Court to the recent district court decision in <u>Garrick v. Moody</u>

<u>Bible Institute</u>, Case No. 18-C-0573, 2019 WL 4674570 at *9 (N.D. Ill. Sept. 25, 2019).

However, Ms. Koenke respectfully contends that the <u>Garrick</u> decision supports her position in

this matter in certain respects.

<u>Garrick</u> was a recent case involving a religious organization's purported right to exclude

women from its religious leadership.  <u>Garrick v. Moody Bible Institute</u>, Case No. 18-C-0573,

2019 WL 4674570 at *4 (N.D. Ill. Sept. 25, 2019).  Although the <u>Garrick</u> court reasoned that

there might be certain elements of the case that implicated religious rights, the court also

reasoned, "But there are strains of Garrick's Title VII claims that may not be tied to Moody's

religious beliefs.  For instance, Garrick complains of antagonistic treatment by male colleagues

and inconsistent treatment of female and male faculty members by the administration with

respect to job duties, employment requirements, and performance reviews."  <u>Id.</u> at *9.  The

<u>Garrick</u> court found that, "[t]o the extent Garrick can state a claim concerning these issues in a

way that is untethered from her disagreements with Moody's religious views, she may be able to

pursue those claims."  <u>Id.</u>  The court held that the "church autonomy doctrine and ministerial

exception did not apply to antagonistic treatment of female faculty members by male colleagues

and inconsistent treatment of female faculty members by administration with respect to job

duties, employment requirements, and performance reviews."  <u>Id.</u>  Therefore, the <u>Garrick</u> court

---

2  It should be noted that the <u>Demkovich</u> court actually ruled against the defendant-church on its Free Exercise claim, relying specifically on <u>Bollard</u> to find instead that a hostile work environment claim of sexual harassment brought by a minister was not barred by the Free Exercise Clause.  <u>Demkovich</u>, 343 F. Supp. at 785-86.

permitted the plaintiff the ability to amend her claims in response to the defendant's motion to dismiss.  Id.

In the instant case, Defendant's Motion to Dismiss based on the First Amendment should be denied.  Ms. Koenke should instead be permitted a full and fair opportunity in discovery to demonstrate that Defendant went too far here regarding some strains, in some of its demands of Ms. Koenke, and with respect to some of the onerous conditions placed upon Ms. Koenke as explained below.  Again, Defendant condemned sexual-orientation discrimination as a form of sex discrimination in its own policies, procedures, and statements, including at the time.  Further, this is *not* a case about the religious right to choose or select a minister because the Defendant already voluntarily opened the position at the time to Ms. Koenke who is LGBT.

> **3.    Defendant does not directly address or set forth a sincere religious justification for certain strains of this case which, therefore, Plaintiff contends, may not tied to such religious beliefs or justifications, including the requirement that Plaintiff "delete her current Facebook account, create a new Facebook account, but not add any of the employees of Defendant's University to be Plaintiff's Facebook friends"; Defendant taking no position on Plaintiff having a picture of Plaintiff's spouse on her desk; and Defendant taking no position on Plaintiff's spouse attending University functions.**

Defendant does not directly address certain strains of the complained-of harassment here as alleged by Plaintiff in this case directly.  Plaintiff therefore contends that, where there are strains of this case which do not directly implicate a religious belief or justification which the Defendant can directly set forth, it is inappropriate to dismiss these strains of the case without the benefit of discovery.  Looking closely, the Defendant has *not* directly addressed the following:

First, Plaintiff alleged clearly in her Complaint that Defendant told Plaintiff that "Plaintiff should delete her current Facebook account, create a new Facebook account, but not add any of the employees of Defendant's University to be Plaintiff's Facebook friends."  See Pltf.'s Compl., ECF No. 1, para. 16(a).  Defendant's correspondence to Plaintiff, attached to Defendant's

Motion to Dismiss as Exhibit "A," does _not_ address Facebook or the Facebook-related allegations directly.  Neither does Defendant, in its Motion to Dismiss, directly address these allegations.  Instead, the only direct reference to these allegations is Defendant's description of this conduct, contained in the Statement of Facts, as a request for Plaintiff "to exercise discretion with regard to public or social media statements . . . ."  See Def.'s Br. in Support of Mot. to Dismiss, ECF No. 5-1, p. 3.  This is simply _not_ true nor what actually occurred here.  This is _not_ what the Complaint alleged either.  The Complaint alleged that Defendant told Plaintiff that "Plaintiff should delete her current Facebook account, create a new Facebook account, but not add any of the employees of Defendant's University to be Plaintiff's Facebook friends."  See Pltf.'s Compl., ECF No. 1, para. 16(a).  This is, respectfully, beyond the bounds of appropriate conduct with respect to what an employer can ask of an employee.  Simply stated, Defendant went way too far here.  Plaintiff contends there is no religious justification or belief to support this kind of behavior.  And, Defendant does _not_ directly address the Complaint's allegations on this point, Plaintiff contends, because such conduct is clearly biased.  As such, Plaintiff believes Defendant has not set forth directly a sincere religious belief or justification for the Facebook-related conduct implicated here, and the Court should therefore not resolve this issue in Defendant's favor on a motion to dismiss.

Second, the correspondence to Plaintiff which Defendant relies upon and attaches as Exhibit "A" to its Motion to Dismiss, in point of fact, takes no position, in Defendant's words, on whether Plaintiff was permitted, consistent with the Defendant's conditions, to have a picture of her spouse on her desk at work.  See Correspondence from Defendant to Plaintiff, dated August 5, 2013, at Ex. "A" to Def.'s Mot. to Dismiss.  Again, Defendant did not necessarily set

forth a direct religious belief or justification to support this particular strain of conduct in its correspondence to Plaintiff at the time.

Third, this correspondence also takes no position, in Defendant's own words, on whether Plaintiff was permitted, consistent with the Defendant's conditions, to have Plaintiff's spouse accompany Plaintiff to University events.  See id.  Defendant once again did not necessarily set forth a direct religious belief or justification to support this strain of conduct at the time.

Plaintiff contends that, because Defendant's conduct was clearly biased, this is why Defendant would not defend certain strains of its conduct directly.  That is, Defendant maintained that it imposed _no_ particular rules or requirements on Plaintiff regarding her conduct with her spouse, but then, at the same time – in a Janus-faced fashion, looking both ways at the same time – Defendant actually did the opposite of what it said, and _did_ nevertheless impose such rules or requirements on Plaintiff.

As the decision in Demkovich, which is cited by Defendant in its Motion to Dismiss, makes clear, an employee who is a minister may nevertheless recover if "[n]o religious justification is offered at all (for a non-tangible employment action)."  Demkovich, 343 F. Supp. 3d at 785-86.  This is also the fundamental holding of Bollard.  See Bollard, 196 F.3d at 947. Plaintiff respectfully contends that Defendant does not wish to directly address or defend the above matters specifically on account of bias.  If Defendant cannot take a direct position or directly identify a religious justification which supports the above conduct, then this supports the conclusion that there may be strains of this case not necessarily tied directly to religious beliefs or justifications sincerely set forth by Defendant here.

It should be noted, further, that the Facebook-related allegations, along with the other strains which the University did not directly take a position on at the time, are strains prohibited

by the University's own policies, procedures, and public statements in 2013, which indicated that

sexual-orientation discrimination is prohibited by the employment laws and Title IX.  See, e.g.,

Pltf.'s Compl., ECF No. 1, at para. 13.

     Ms. Koenke should be permitted the ability to conduct discovery including regarding the

correspondence Defendant attached as Exhibit "A" to its Motion to Dismiss.  For example, in

that very same correspondence, Defendant purports not to take a position on certain aspects of

the complained-of conduct.  This Court should permit discovery into the strains of this case that

may be permissible, and deny Defendant's Motion to Dismiss accordingly.

    **4.**    **Plaintiff alleges pretext in that Plaintiff contends Defendant's statements being made now are not sincere regarding the requirement at the time that Plaintiff "delete her current Facebook account, create a new Facebook account, but not add any of the employees of Defendant's University to be Plaintiff's Facebook friends"; Defendant taking no position on Plaintiff having a picture of Plaintiff's spouse on her desk at the time; and Defendant taking no position on Plaintiff's spouse attending University functions at the time.**

     Plaintiff should be permitted discovery into whether each of the strains of Defendant's

conduct were sincerely borne of religious belief, or not, or whether Defendant's representations

to this Court regarding certain strains of conduct are pretextual.

     Plaintiff respectfully emphasizes that Defendant is making an argument which is Janus-

faced, looking both ways at the same time.  Defendant took no position, or did not directly take a

position, on certain matters such as Plaintiff having a picture of her spouse on her desk at work,

Plaintiff's spouse attending University functions, and certain complained-of conduct regarding

Plaintiff's spouse.  Yet, at the same time Defendant was saying it took no such position,

Defendant actually did impose such onerous requirements on Plaintiff regardless.  Now,

Defendant is taking the position that it may clearly impose such requirements from the very

beginning.  Plaintiff alleges pretext and that the Defendant's statements regarding its purported

justification for certain strains of its conduct here are not sincere.  They are being raised to defeat Plaintiff's claims after-the-fact.  Defendant already voluntarily opened the job to Ms. Koenke who is LGBT.  Discovery should be permitted to probe these aspects of Defendant's inconsistent statements regarding certain strains of this case.

Likewise, as above, Defendant does not directly address the allegation in the Complaint where Plaintiff alleged that Defendant told Plaintiff that "Plaintiff should delete her current Facebook account, create a new Facebook account, but not add any of the employees of Defendant's University to be Plaintiff's Facebook friends."  See Pltf.'s Compl., ECF No. 1, para. 16(a).  The only point at which Defendant references this is to recast the allegation by suggesting Defendant instead asked Plaintiff "to exercise discretion with regard to public or social media statements . . . ."  See Def.'s Br. in Support of Mot. to Dismiss, ECF No. 5-1, p. 3.  This is *not* true and this is *not* what the Complaint alleged either.  Defendant does not directly defend this particular Facebook-related conduct by setting forth an actual religious justification which is sincere and upon which Defendant actually based its decisions here at the time.

Finally, it should be noted that Defendant is also inconsistent in its Motion to Dismiss when Defendant states that its conduct simply constituted "communication of its expectations of discretion and ***professionalism*** to her."  See Def.'s Br., ECF No. 5-1, at p. 20 (emphasis added).  This is insincere.  In the correspondence to Plaintiff which Defendant relies upon and attaches as Exhibit "A" to its Motion to Dismiss, such correspondence, at the time, even recognized, to the contrary, that "the University acknowledges your professional contribution to the University community . . . ."  See Ex. "A" to Def.'s Mot. to Dismiss.  Respectfully, being gay doesn't impact a person's "professionalism."  There is no religious justification, belief, or support for the proposition – nor does Defendant put one forward – to suggest that being gay impacts a person's

16

"professionalism."  This is an invidious stereotype which Plaintiff contends is rooted in sex discrimination.

C.    **Sexual Orientation Discrimination Is a Cognizable Form of Sex Discrimination Under Title IX, and the Third Circuit Has _Not_ Held To The Contrary.**

Defendant argues that "the current state of the law in the Third Circuit" does not permit sexual-orientation discrimination claims as a matter of law.  See Def.'s Br., ECF No. 5-1, at p. 27.  This is _not_ correct.  The Third Circuit has _not_ explicitly ruled against sexual-orientation discrimination as a form of sex discrimination under Title IX.  Ms. Koenke further contends that there is simply _no_ line and distinction that can be drawn between sexual-orientation discrimination and gender-stereotyping discrimination as a matter of law under Title IX.

Preliminarily, it should be noted that the position which Defendant is taking in its Motion to Dismiss is completely inconsistent with Defendant's own policies, procedures, and public statements, regarding coverage of sexual-orientation discrimination, including at the time.  For example, Ms. Koenke alleged specifically in her Complaint, as follows:

> At all times relevant hereto, in or around 2013, the "Definitions" section of Defendant's policy for Campus Resources, Human Resources, "Prohibiting Discrimination, Harassment, and Retaliation," explicitly stated, "For purposes of applying this policy, 'sexual' harassment includes conduct that is of a sexual nature or related to a person's gender and may include persons of the same sex … Harassment on the basis of one's sexual orientation can also constitute discrimination on the basis of sex."

See Pltf.'s Compl., ECF No. 1, at para. 13 (citing Defendant's Policy on Campus Resources, Human Resources, "Prohibiting Discrimination, Harassment, and Retaliation," Definitions, at p. 1 (2013)).

Ms. Koenke further alleged, in the Complaint, that "Defendant's conduct as described herein violated Defendant's own written policy, and although Defendant condemned such conduct in its own written policy, Defendant nevertheless perpetrated the hateful and harassing

conduct described herein against the Plaintiff, and for which the Plaintiff therefore seeks to recover." See id.

Furthermore, Ms. Koenke contends that, as a matter of law, sexual-orientation harassment is prohibited as a form of gender stereotyping cognizable under Title IX. See, e.g., Dear Colleague Letter, dated Oct. 26, 2010, archived at [https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf] (Last Accessed Jan. 17, 2020). In reality, this is why such statements are reflected in Defendant's own written policies, procedures, and statements, including at the time. Respectfully, it is only now, in the hope of avoiding this lawsuit, that Defendant is taking a contrary position in Defendant's Motion to Dismiss.

Although Defendant indicates in its Motion to Dismiss that the above guidance was subsequently withdrawn by the Department of Education under President Trump – see Defendant's Brief at page 25, footnote 12 – this should have no effect on the Court's analysis. Ms. Koenke respectfully believes that the Trump administration's decision to withdraw the aforementioned LGBT guidance was predicated on discriminatory animus. Title IX has not changed from what it said in 2010 and nothing in the intervening seven (7) years has changed the plain language of Title IX. LGBT students and employees should respectfully not be stripped of these rights as Defendant suggests. The October 26, 2010 Dear Colleague Letter should be considered persuasive authority on how Title IX should be interpreted here. See also Videckis v. Pepperdine Univ., 150 F. Supp. 3d 1151, 1159 (C.D. Cal. 2015) (holding that "the line between sex discrimination and sexual orientation discrimination is difficult to draw because that line does not exist, save as a lingering and faulty judicial construct").

Defendant further argues that *Title VII* jurisprudence on the question of coverage for sexual-orientation discrimination should be extended to *Title IX*.  Plaintiff disagrees.  This Court should find instead that Title IX prohibits sexual-orientation discrimination as a form of gender-stereotyping discrimination.  Defendant has not identified any binding authority in the Third Circuit to the contrary under Title IX, and there is no bar to such a claim in the Third Circuit.

Rather, Defendant references certain decisions under *Title VII* which did not extend explicit protection for discrimination based on "sexual orientation," including, for example, Bibby v. Philadelphia Coca Cola Bottling Company, 260 F.3d 257 (3d Cir. 2001); Guess v. Philadelphia Housing Authority, 354 F. Supp. 3d 596 (E.D. Pa. 2019); and Doe v. Casino, 381 F. Supp. 3d 425 (E.D. Pa. 2019).

However, although Plaintiff respectfully disagrees with these decisions for the reasons explained more fully below, and because these cases did not involve Title IX specifically, it should be noted that these cases actually stand for the proposition that only Title VII claims styled as "sexual orientation" claims are prohibited, while claims instead styled as "gender stereotyping" claims are permitted.  The decisions cited by Defendant in its Motion to Dismiss, including Guess and Doe v. Parx Casino, supra., make this clear.

For example, the court in Guess specifically reasoned that the plaintiff's Title VII claims failed because "[p]laintiff has framed his hostile work environment claim exclusively as discrimination on the basis of perceived sexual orientation," and the "[p]laintiff's only arguments in support of a gender stereotyping claim appear in his Response" where "he contends in a footnote that Count I could be relabeled 'Sex Discrimination' and [be] supported by the same facts."  Guess v. Phila. Housing Auth., 354 F. Supp. 3d 596, 603 (E.D. Pa. 2019).  The claims in Guess failed only because they were not labeled "gender stereotyping" claims in the complaint.

Likewise, in Doe v. Parx Casino, the court dismissed the sexual-orientation claims because, the court reasoned, "While it is accurate that [the p]laintiff did in fact make [] allegations [of gender stereotyping] in the Complaint, like the plaintiff in Guess, she clearly and distinctly frames her hostile work environment claim and wrongful termination claim as discrimination on the basis of sexual orientation." Doe v. Parx Casino, 381 F. Supp. 3d 425, 437 (E.D. Pa. 2019).  The court further pointed out that the "[p]laintiff raised gender stereotyping for the first time in the Response in Opposition to Defendants' Motion to Dismiss." Id.  As a result, the court felt compelled to dismiss the sexual-orientation claims because they were not specifically labeled "gender stereotyping" claims in the complaint.  Id.

In full candor, undersigned counsel can distinguish the above cases from the instant case because undersigned counsel was the plaintiff's attorney in both the Guess and Doe v. Parx Casino cases.  Undersigned counsel was therefore responsible for drafting the complaint in both the Guess and Doe v. Parx Casino cases.  However, in the instant matter, to the contrary, Ms. Koenke's claims have been specifically pled under the rubric of "gender stereotyping," "sexual harassment," and "sex," which is unlike Guess and Doe v. Parx Casino.  See, e.g., Pltf.'s Compl., ECF No. 1, at para. 16, 28, 29, 32.  Also, unlike in Guess and Doe v. Parx Casino, the headings for each Count in Ms. Koenke's Complaint specify "gender stereotyping," "sexual harassment," "sex," or all three (3) of these concepts altogether, without any mention in the heading of the words, "sexual orientation," at all.  See Pltf.'s Compl., ECF No. 1, p. 3, 21, 37, 52.

**D.** **This Court Should Decline to Follow *Bibby v. Philadelphia Coca Cola Bottling Company*, in Light of the Numerous Reported Appellate and Lower Court Decisions Holding That Title VII *Does* Cover Sexual Orientation Discrimination, or, Alternatively, this Court Should Permit an Immediate Interlocutory Appeal for the Third Circuit to Re-examine *Bibby*.**

To the extent this Court believes Bibby, supra., applies to Title IX claims, which Plaintiff respectfully contends it does *not*, then Plaintiff still contends that this Court is not obligated to follow Bibby.  This Court should instead conduct its own reasoned analysis of the Title VII coverage question.  If this Court cannot square Bibby with the gender-stereotyping jurisprudence under Title VII, then the Court is not obligated to follow Bibby.  This Court should find persuasive the numerous reported appellate and lower-court decisions, including out of the Western District of Pennsylvania, as well as the position of the Equal Employment Opportunity Commission ("EEOC") itself, which have determined that sexual-orientation discrimination is covered under Title VII.

In the alternative, if this Court feels it must follow Bibby, then Plaintiff respectfully requests that this Court grant an immediate interlocutory appeal on the coverage question so that the Third Circuit may itself re-examine Bibby.

The Third Circuit's ruling in Bibby occurred nearly twenty (20) years ago.  However, since that time, there has been a societal and legal tectonic shift around our understanding of sexual orientation and the lives of gay, bisexual, and lesbian people.  Ms. Koenke respectfully contends that Bibby was wrongly decided, both then and now.

More specifically, the Third Circuit in Bibby did not consider the arguments for coverage articulated here and found persuasive by the full Courts of Appeals for the Second and Seventh Circuits, and by numerous federal district courts, including some within this Circuit.  See, e.g., Zarda v. Altitude Express, Inc., 883 F.3d 100 (2d Cir. 2018) (*en banc*) (*certiorari* granted by the

Supreme Court of the United States); <u>Hively v. Ivy Tech Cmty. Coll. of Indiana</u>, 853 F.3d 339 (7th Cir. 2017) (*en banc*); <u>U.S. Equal Employment Opportunity Comm'n v. Scott Med. Health Ctr., P.C.</u>, 217 F. Supp. 3d 834 (W.D. Pa. 2016).  The Supreme Court of the United States will be addressing <u>Zarda</u>, along with two (2) other cases, this term.  Defendant has <u>*not*</u> referenced this fact anywhere in its Motion to Dismiss.

The <u>Bibby</u> Court was not presented with the argument that sexual orientation discrimination was covered by Title VII, <u>see Scott Med. Health Ctr.</u>, 217 F. Supp. 3d at 841, but rather with the fact that John Bibby was harassed because he was male and that by attributing the harassment to his sexual orientation, the district court was "placing an extra burden on gay and lesbian plaintiffs" to "prove that their harassers were not motivated by anti-gay animus."  <u>Bibby</u>, 260 F.3d at 264.  As such, the <u>Bibby</u> Court failed to grapple with how seminal Supreme Court authority about sex discrimination, such as <u>Phillips v. Martin Marietta Corporation</u>, 400 U.S. 542 (1971), <u>City of Los Angeles Department of Water & Power v. Manhart</u>, 435 U.S. 702 (1978), or even <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989), applied in the context of sexual-orientation discrimination.  Reexamination of <u>Bibby</u>, which carved sexual orientation claims out of Title VII without any textual basis for doing so, is particularly warranted when sister courts have now overruled their own contemporaneous precedents, and the decision in <u>Bibby</u> is inconsistent with the Third Circuit and the Supreme Court's other precedents.

Courts have begun to recognize that sexual orientation discrimination is a form of sex discrimination prohibited by Title VII under three frameworks.  First, sexual orientation discrimination is inherently a form of sex discrimination because one cannot discriminate against a person based on the person's sexual orientation without taking into account and considering that person's sex.  <u>Zarda</u>, 883 F.3d at 116; <u>see also Hively</u>, 853 F.3d at 345-46.  Second, just as

discrimination against an employee who is romantically involved with someone of a different race has universally been recognized as race discrimination barred by Title VII, discrimination against an employee who is attracted to someone of the same sex must be recognized as sex discrimination equally barred by that law.  Zarda, 883 F.3d at 124-28; Hively, 853 F.3d at 347-48.  Third, under a sex stereotyping theory, sexual orientation discrimination is sex discrimination because it rests on the sex-specific stereotype that men are or should be attracted only to women, and that women are or should be attracted only to men.  Zarda, 883 F.3d at 119-22; Hively, 853 F.3d at 346.  The Court in *Bibby* did not consider any of these three (3) arguments.

These arguments were also set forth in a recent EEOC decision, which supports Plaintiff's position in this matter, but which is not cited by Defendant.  See Baldwin v. Foxx, Appeal No. 0120133080, 2015 WL 4397641 (EEOC July 15, 2015).  And, as above, the Western District of Pennsylvania has ruled in favor of coverage for sexual-orientation discrimination in EEOC v. Scott Med. Health Ctr., P.C., 217 F. Supp. 3d 834 (W.D. Pa. 2016).

Bibby was also decided before Lawrence v. Texas, 539 U.S. 558 (2003), at a time when the relationships of gays and lesbians could be criminalized, and before United States v. Windsor, 133 S. Ct. 2675 (2013), and Obergefell v. Hodges, 135 S. Ct. 2584 (2015), before the Supreme Court recognized *de jure* discrimination against same-sex couples to be unconstitutional. However, in light of these decisions, the right to intimately associate with someone of the same sex is now considered by the Supreme Court to be a fundamental right.  Cf. Loving v. Virginia, 388 U.S. 1 (1967) (discrimination against a person because of the race of the person's partner was discrimination inherently because of race).  Bibby is inconsistent with the Supreme Court's own jurisprudence to date, as well as with the societal and legal context in which LGBT people live

23

today.  This Court should not follow Bibby and, in the alternative, this Court should grant an immediate interlocutory appeal because the time has come to reexamine Bibby.

It should be noted that the United States District Court for the Eastern District of Pennsylvania has twice before certified the instant coverage question for immediate interlocutory appeal at the request of undersigned counsel in both cases.  See Order, Guess v. Phila. Housing Auth., No. 18-2948 (E.D. Pa. March 5, 2019) (Dkt. 28); see also Order, Doe v. WM Operating, LLC, No. 17-2204 (E.D. Pa. Sept. 28, 2017) (Dkt. 56).  If this Court intends to rule against Ms. Koenke on the coverage question, although Ms. Koenke respectfully contends there is no basis to do so, then this Court should permit Ms. Koenke the opportunity to have the instant coverage question certified for immediate interlocutory appeal.

Whatever differences of opinion exist on the merits of this question, there is universal recognition of the importance of the issue of Title VII's coverage of sexual orientation discrimination.  See, e.g., Hively, 853 F.3d at 343 (noting that, "[i]n light of the importance of the issue," "and to bring our law into conformity with the Supreme Court's teachings," *en banc* review was warranted); Id. at 359 (Sykes, J., dissenting) (calling the issue "momentous").

As such, this Court should not follow Bibby, and in the alternative, Ms. Koenke respectfully requests this Court grant an immediate interlocutory appeal on the coverage question.  Ms. Koenke requests that this filing also be construed as a Cross-Motion for Immediate Interlocutory Appeal if necessary.  That is, to the extent that Ms. Koenke's request for an immediate interlocutory appeal on the Title IX coverage question requires a Cross-Motion, then Ms. Koenke hereby files the instant document also as a Cross-Motion.

**E.   Whether the Conduct at Issue Was Sufficiently "Severe or Pervasive," "Objectively Offensive," And Whether the Standard for a Constructive Discharge Have Been Met, Are Fact-Intensive Questions Inappropriate for Resolution on a Motion to Dismiss, But Nevertheless, Ms. Koenke Can Satisfy Each of These Elements.**

Whether the harassment complained of by Ms. Koenke was "severe or pervasive," "objectively offensive," or whether the standard for a constructive discharge has been met, are fact-intensive inquiries which this Court should not resolve on a motion to dismiss, without the benefit of discovery.

It is well-recognized that courts have "shown a reluctance to dismiss a complaint at the [motion to dismiss] stage when the primary challenge to the hostile work environment claim is whether or not the conduct in question is severe and/or pervasive."  Grasty v. World Flavors, Inc., Civ. No. 11–1778, 2011 WL 3515864 at *9, n. 2 (E.D. Pa. Aug. 11, 2011).  Since "the inquiry is necessarily fact-intensive . . . summary judgment provides a more appropriate vehicle to resolve [the issue], as the parties at that stage have had an opportunity to conduct discovery and develop their claims."  Long v. Pizza Hut, No 03–0738, 2003 WL 23019186 at *4 (W.D. Pa. Nov. 5, 2003) (citation omitted); see also Ingram v. Vanguard Group, No. 14-3674, 2015 WL 4394274 at *19 (E.D. Pa. July 17, 2015) (same); Bombalski v. Lanxess Corp., No. 13-01653, 2014 WL 950355 at *3 (W.D. Pa. Mar. 11, 2014) (same); Grillo v. John Alden Life Ins. Co., 939 F. Supp. 685, 687-88 (D. Minn. 1996) ( "This court cannot determine whether Title VII … provides a remedy [at the 12(b)(6) stage] without the benefit of [a] fully-developed factual record on which to base a decision ... [as] it is obviously premature to accept [a] defendant's contention that any harassment suffered by plaintiff was insufficiently 'severe or pervasive' to be actionable.") (citations omitted).

Likewise, it is well-recognized that whether the standard for a constructive discharge has been met is a fact-intensive inquiry inappropriate for resolution on a motion to dismiss.  See, e.g., Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003); Hill v. Borough of Kutztown, 455 F.3d 225, 232, n. 7 (3d Cir. 2006); Levendos v. Stern Entertainment, Inc., 860 F.2d 1227, 1230 (3d Cir. 1988); Searls v. City of Meadville, Case No. 09-15, 2009 WL 5111799 at *4 (W.D. Pa. Dec. 18, 2009); Lebofsky v. City of Philadelphia, Case No. 06-CV-5106, 2007 WL 1217874, at *3 (E.D. Pa. Apr. 24, 2007) (constructive discharge inappropriate for judgment on the pleadings).

Moreover, whether conduct was "objectively offensive" – or, in the Title IX context, whether conduct was "severe, pervasive, or objectively offensive," is also recognized as a fact-intensive question which should not generally be decided at the motion to dismiss stage.  See C.S. v. Southern Columbia Sch. Dist., No. 4:12-CV-1013, 2013 WL 2371413, at *10 (M.D. Pa. May 21, 2013) ( "[C]onstruing the complaint in the light most favorable to C.S., as we must when deciding a motion to dismiss, we cannot say as a matter of law that the encounters were not severe, pervasive, or objectively offensive . . . .").

Ms. Koenke contends that the facts here reveal, and discovery will further reveal, that the harassment which Ms. Koenke alleges she was subjected to was "severe or pervasive," "objectively offensive," and that the standard for a constructive discharge has been met.  Any reasonable LGBT person would absolutely feel the same.  Ms. Koenke characterizes the Defendant's conduct as "hateful" throughout her Complaint.  See Pltf.'s Compl., ECF No. 1, at para. 13, 16, 16(j).  At one point, with all due respect, Ms. Koenke felt it preferable to try to end her own life, rather than continue to be subject to Defendant's conduct.  See id. at para. 16(j). And, whether the harassment complained of by Ms. Koenke was "severe or pervasive,"

"objectively offensive," or whether the standard for a constructive discharge has been met, are

fact-intensive inquiries inappropriate for a motion to dismiss.  Ms. Koenke should be permitted

the benefit of discovery into these elements.  The question is not whether Ms. Koenke can make

out each of these elements right now, which Ms. Koenke contends she nevertheless can.  Rather,

the question is instead whether discovery would reveal the necessary elements for Ms. Koenke to

make out her claims.  Therefore, the Court should not resolve questions regarding the severity or

pervasiveness of harassment, whether the harassment was objectively offensive, or whether a

resignation amounts to a constructive discharge, on a motion to dismiss, without the benefit of

discovery.

**IV.**    **CONCLUSION**

For all of the foregoing reasons, Plaintiff, Noel Koenke, respectfully requests that the

Defendant's Motion to Dismiss (ECF No. 5) be denied in its entirety and, in the alternative, Ms.

Koenke respectfully requests that this Court permit an immediate interlocutory appeal on the

coverage question.

Respectfully submitted,

**THE LAW OFFICES OF ERIC A. SHORE, P.C.**

DATED:  01/17/2020            */s/ Justin F. Robinette, Esquire*_____
JUSTIN F. ROBINETTE, ESQUIRE
Attorney I.D. No. 319829
THE LAW OFFICES OF ERIC A. SHORE, P.C.
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19102
Phone: (215) 944-6121
Fax: (215) 944-6124
JustinR@EricShore.com

*Attorney for Plaintiff, Noel Koenke*

27

**CERTIFICATE OF SERVICE**

I, JUSTIN F. ROBINETTE, ESQUIRE, Attorney for Plaintiff, Noel Koenke, do hereby certify that on this 17th day of January, 2020, I caused a true and correct copy of the foregoing Response in Opposition to the Motion of Defendant to Dismiss Plaintiff's Complaint (ECF No. 5), the Brief in Support thereof, and Plaintiff's Cross-Motion for Immediate Interlocutory Appeal, to be filed with the Court electronically and served on the following, via the method set forth below:

***VIA ECF NOTIFICATION ONLY***

Kristine Grady Derewicz, Esquire
Michael Romeo, Esquire
Littler Mendelson, P.C.,
Three Parkway,
1601 Cherry Street, Suite 1400,
Philadelphia, PA 19102-1321

*Attorneys for Defendant, Saint Joseph's University*

Respectfully submitted,

**THE LAW OFFICES OF ERIC A. SHORE, P.C.**

DATED: 01/17/2020          */s/ Justin F. Robinette, Esquire_____*
                                            JUSTIN F. ROBINETTE, ESQUIRE
                                            Attorney I.D. No. 319829
                                            THE LAW OFFICES OF ERIC A. SHORE, P.C.
                                            Two Penn Center
                                            1500 JFK Boulevard, Suite 1240
                                            Philadelphia, PA 19102
                                            Phone: (215) 944-6121
                                            Fax: (215) 944-6124
                                            JustinR@EricShore.com

                                            *Attorney for Plaintiff, Noel Koenke*