# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NOEL KOENKE** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 19-4731** |
| **v.** | : | |
| | : | |
| **SAINT JOSEPH'S UNIVERSITY** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                        JANUARY 8, 2021

## MEMORANDUM OPINION

**INTRODUCTION**

      Plaintiff Noel Koenke filed this employment discrimination action pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq*., against her former employer, Defendant Saint Joseph's University, asserting claims of discrimination based on her sexual orientation.  [ECF 1].  Before this Court is Defendant's motion to dismiss Plaintiff's complaint, filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), for failure to state a claim upon which relief can be granted.  [ECF 5].  Plaintiff opposes the motion.  [ECF 8].  The issues presented in the motion are fully briefed and are ripe for disposition.[1]  For the reasons stated herein, Defendant's motion to dismiss is granted.

**BACKGROUND**

      When ruling on a motion to dismiss, this Court must accept as true all the factual allegations in Plaintiff's complaint and construe the complaint in the light most favorable to Plaintiff.  *Fowler*

---

[1]     This Court also considered the parties' notices of supplemental authority and responses thereto, [ECF 20, 21, 24, 27, 28, 31], and the amicus brief in support of Plaintiff's opposition filed by New Ways Ministry, DIGNITYUSA, Dr. Arthur Fitzmaurice, and TransCatholic Apostolate, [ECF 16], and Defendant's response to the amicus brief.  [ECF 19].

*v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). The relevant allegations in Plaintiff's complaint are summarized as follows:

> Plaintiff, a homosexual woman, was employed by Defendant, a private, Catholic university, as an Assistant Director for Music and Worship until she resigned in November 2017.[2] The parties agree that Plaintiff's position was ministerial in nature, as defined by the breadth of precedent regarding the ministerial exception. Plaintiff alleges that she was discriminated against on the basis of her sex, more specifically, her sexual orientation, and was subjected to a hostile work environment and tangible adverse employment actions, which included, inter alia, the imposition of impermissible conditions on her continued employment, impermissible differential treatment regarding the terms, conditions, and privileges of her employment, and a constructive discharge.

**LEGAL STANDARD OF REVIEW**

Rule 12(b)(6) permits a court to grant a motion to dismiss an action if the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210-11 (citing *Iqbal*, 556 U.S. at 677). The court must determine whether the plaintiff has pled facts sufficient to show a plausible entitlement to relief. *Fowler*, 578 F.3d at 211. The complaint must do more than merely allege a plaintiff's entitlement to relief—it must "show such an entitlement with its facts." *Id.* (citations omitted). The plaintiff "must allege facts sufficient to 'nudge [his or her] claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. After construing the complaint in the light most favorable to the plaintiff, if the court finds that the plaintiff could not be entitled to relief, it can dismiss the claim. *Fowler*, 578 F.3d at 210.

---

[2]  Plaintiff characterizes her resignation as a constructive discharge.

**DISCUSSION**

In its motion to dismiss, Defendant contends that Plaintiff's complaint fails to state a claim upon which relief can be granted. Specifically, Defendant argues that: (1) Plaintiff's claims at Counts 1, 2, and 4 are barred by Title IX's statute of limitations; (2) Plaintiff's claims are all barred by the First Amendment of the United States Constitution's ministerial exception; (3) Plaintiff's claims all fail because sexual orientation is not a protected class under Title IX; and (4) Plaintiff's hostile work environment claim fails because she did not allege facts sufficient to establish such a claim. This Court will address these arguments in relevant order.

### *Sexual Orientation as a Protected Class*

Plaintiff brings this action under Title IX of the Education Amendments of 1972 ("Title IX"), which "prohibits discrimination based on sex in all educational programs that receive funds from the federal government." *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 533 (3d Cir. 2018). It is well-settled that Title VII of the Civil Rights Act of 1964 ("Title VII") precedents are instructive in Title IX discrimination cases. *See id.* at 534 (holding and applying Title VII precedent to a Title IX claim). Though Defendant's argument on this issue was correct when the motion was filed, the United States Supreme Court subsequently decided the landmark case, *Bostock v. Clayton Cnty.*, and held that Title VII prohibits employment discrimination on the basis of sexual orientation, through its prohibition of discrimination on the basis of "sex." *See, generally*, Bostock, 140 S. Ct. 1731 (2020) (interpreting the scope of Title VII's discrimination ban that uses identical language to Title IX's discrimination ban). Thus, Title IX's prohibition on sex discrimination constitutes a prohibition on sexual orientation discrimination. Accordingly, Defendant's argument that sexual orientation is not a protected class under Title IX is without merit. *See*, *e.g.*, *Adams v. Sch. Bd.*, 968 F.3d 1286, 1304-1305 (11th Cir. 2020) (applying *Bostock*'s

3

holding to Title IX case, holding *Bostock*'s "reasoning applies with the same force to Title IX's equally broad prohibition on sex discrimination."); *see also Doe v. Univ. of Scranton*, 2020 U.S. Dist. LEXIS 187526, at *11 n.61 (M.D. Pa. Oct. 9, 2020) (collecting cases where courts applied *Bostock* to Title IX sexual orientation discrimination claims).

### *Applicability of the Ministerial Exception*[3]

Defendant argues that Plaintiff's claims are all barred by the First Amendment of the United States Constitution's ministerial exception. The United States Supreme Court recently described the ministerial exception as follows:

> The First Amendment protects the right of religious institutions to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine. Applying this principle, [the Supreme Court] held in *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U. S. 171, 132 S. Ct. 694, 181 L. Ed. 2d 650, that the First Amendment barred a court from entertaining an employment discrimination claim brought by [a] teacher against the religious school where she taught. [This] decision built on a line of lower court cases adopting what was dubbed the "ministerial exception" to laws governing the employment relationship between a religious institution and certain key employees.

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2055 (2020) (internal quotations and citations omitted). The Supreme Court concisely defined the ministerial exception, stating: "Under this rule, courts are bound to stay out of employment disputes involving those holding certain important positions with churches and other religious institutions." *Id*. at 2060. More specifically, the Supreme Court held: "When a school with a religious mission entrusts a teacher with the responsibility of educating and forming students in the faith, judicial intervention into

---

[3] Plaintiff argues that the ministerial exception is an affirmative defense and whether or not the exception applies should not be resolved at the motion to dismiss stage. Pltf. Br., ECF 8, at 10-11. Plaintiff is mistaken. While the ministerial exception is, indeed, an affirmative defense, the United States Court of Appeals for the Third Circuit has itself addressed the exception at the motion to dismiss stage, affirming dismissal on that basis and holding that "the [ministerial] exception does not act as a jurisdictional bar, but rather, is best viewed as a challenge to the sufficiency of [Plaintiff]'s claim under Rule 12(b)(6)[ and . . .] is akin to a government official's defense of qualified immunity, which is often raised in a Rule 12(b)(6) motion." *Petruska v. Gannon Univ*., 462 F.3d 294, 302-03 (3d Cir. 2006).

4

disputes between the school and the teacher threatens the school's independence in a way that the First Amendment does not allow." *Id*. at 2069.

Here, Plaintiff does not dispute that she "was, in fact, a minister." *See* Plf. Reply Br., ECF 24, at 3.  Rather, the parties dispute whether the ministerial exception applies to *all* of Plaintiff's claims.  Defendant contends that the exception applies to employment discrimination disputes between so-defined ministerial employees and their religious institution employers.  Plaintiff disagrees and contends that the exception applies only to employment discrimination claims based on *tangible* adverse employment actions, and does not apply to other *non-tangible* employment discrimination claims, such as a hostile work environment claim.

Plaintiff urges this Court to follow the non-controlling and since-vacated[4] decision in *Demkovich v. St. Andrew the Apostle Par.*, which held "[t]he right balance is to bar claims by ministerial employees challenging tangible employment actions but to allow hostile environment claims that do not challenge tangible employment actions[,]" and further found that *Hosanna-Tabor* and *Our Lady of Guadalupe* did not create a "'categorical bar' to a non-tangible sexually hostile work environment claim." 973 F.3d 718, 720, 727-731 (7th Cir. 2020).  In sum, the basis for the *Demkovich* decision was that applying the ministerial exception to non-tangible employment discrimination claims was not "necessary" under the First Amendment's Free Exercise Clause, because "[t]he ministerial exception ensures that religious organizations are able to 'select and control' their ministers without interference from civil law like employment discrimination statutes . . . [and] that purpose can be accomplished by applying the ministerial

---

[4]    As explained in Defendant's notice to this Court, [ECF 32], the Court of Appeals for the Seventh Circuit vacated the *Demkovich* decision on December 9, 2020 and granted defendant-appellant's petition for rehearing *en banc*.  Accordingly, the *Demkovich* decision is not only non-controlling, but now has no persuasive authority as a binding judgment.  Nevertheless, this Court still addresses the parties' arguments regarding *Demkovich*, as Plaintiff still relies on the legal reasoning to present her arguments.

exception to all tangible employment actions[;]" in other words, "giving "[r]eligious employers[] control over tangible employment actions—hiring, firing, promoting, deciding compensation, job assignments and the like—provides ample protection for the free exercise of religion." *Id*. at 720, 727 (citing *Hosanna-Tabor* and *Our Lady of Guadalupe* to summarize the purpose of the ministerial exception, relying on the language "select and control").

In the absence of *Hosanna-Tabor* and *Our Lady of Guadalupe*, this Court may have been inclined to consider, as the *Demkovich* court did, the so-called "right balance" of cases to which the ministerial exception applies. However, *Hosanna-Tabor* and *Our Lady of Guadalupe* closed the door on the issue of whether tangible employment discrimination claims are within the scope of the ministerial exception. As the Supreme Court expressly held "the 'ministerial exception' [applies] to *laws governing the employment relationship* between a religious institution and [ministerial] employees." *Our Lady of Guadalupe Sch.*, 140 S. Ct. at 2055 (internal quotations and citations omitted) (emphasis added). Under the ministerial exception, "courts are bound to stay out of *employment disputes involving* [*ministerial employees*]." *Id*. at 2060 (emphasis added). Plainly, hostile work environment discrimination claims are employment discrimination claims, and Title VII and Title IX are federal statutes governing, *inter alia*, employment relationships. Consequently, hostile work environment claims, particularly those brought pursuant to Title VII or Title IX, clearly fall within the scope of cases banned by the ministerial exception. The distinction made in *Demkovich*, which Plaintiff implores this Court to make here, is not supported by Supreme Court precedent. The Supreme Court has not cabined the ministerial exception to tangible or intangible employment actions, and it is not for this Court to create such an exception to binding precedent.[5]

---

[5]   Furthermore, application of traditional canons of construction support Defendant's interpretation of the Supreme Court's precedent regarding the applicability of the ministerial exception. Defendant

Plaintiff makes an additional argument that Supreme Court precedent does not foreclose non-tangible employment discrimination claims and points to language in *Our Lady of Guadalupe* that the ministerial exception does not apply to *absolutely all* employment discrimination claims. Notably, the Supreme Court clarified that its holdings in *Hosanna-Tabor* and *Our Lady of Guadalupe* "do[] not mean that religious institutions enjoy a general immunity from secular laws[.]" *Our Lady of Guadalupe Sch.*, 140 S. Ct. at 2060. As Plaintiff points out, *Hosanna-Tabor* recognized that the First Amendment's Religion Clauses "foreclose *certain* employment discrimination claims[.]" *Id*. at 2061 (emphasis added). However, the Supreme Court was not silent on what types of employment claims may be excluded from application of the ministerial exception. As the United States Court of Appeals for the Third Circuit ("Third Circuit") highlighted in *Lee v. Sixth Mt. Zion Baptist Church of Pittsburgh*, "*Hosanna-Tabor* involved a

---

contends that the exception applies to employment disputes without regard for the tangible or intangible nature of the claim. The General-Terms Canon dictates that "[w]ithout some indication to the contrary, general words (like all words, general or not) are to be accorded their full and fair scope [and] are not to be arbitrarily limited." Antonin Scalia & Bryan A. Garner, Reading Law 101 (2012). "[T]he presumed point of using general words is to produce general coverage—not to leave room for courts to recognize ad hoc exceptions[.]" *Id*.

Here, Plaintiff asks this Court to "arbitrarily limit" the scope of the words in the phrases "laws governing the employment relationship" and "employment disputes," as used by the Supreme Court in *Hosanna-Tabor* and *Our Lady of Guadalupe*, and convert them to mean only (1) laws governing *tangible employment actions in* the employment relationship and (2) employment disputes *based on tangible employment actions*. This Court declines to do so, as it is clear that the general words refer to their general meanings and no such exceptions were enumerated. If the Supreme Court intended to establish such exceptions, it would have done so.

Additionally, the Omitted-Case Canon dictates that "[n]othing is to be added to what the text states or reasonably implies." *Id*. at 93. "Essentially, this means that even though legal texts can sometimes be incomplete because they fail to address certain situations, courts should not fill in these gaps with rules of their own." Katharine Clark et al., The Writing Center at Georgetown University Law Center, A Guide to Reading, Interpreting and Applying Statutes 4 (2017) (explaining Omitted-Case Canon). Ergo, the simple fact that the holdings of *Hosanna-Tabor* and *Our Lady of Guadalupe* do not specifically address the hypothetical of a non-tangible employment discrimination claim (like a hostile work environment claim) does not mean that courts should attempt to create exceptions and caveats on their own. Accordingly, this Court declines to do such a thing.

7

statutorily-based employment discrimination suit, and the Supreme Court explicitly declined to state whether the ministerial exception 'bars other types of suits, including actions by employees alleging breach of contract [or tortious conduct] by their religious employers.'" 903 F.3d 113, 119-20 (3d Cir. 2018) (citing *Hosanna-Tabor*, 565 U. S. at 196).  Thus, *these* are the types of lawsuits—contract-based and tort-based employment claims—where it remains ambiguous as to whether and to what extent the ministerial exception may apply;[6] the ambiguity is not as broad as Plaintiff would have this Court believe, encompassing all causes of action other than those explicitly litigated by the individual parties in *Hosanna-Tabor* and *Our Lady of Guadalupe*, thus leaving room for non-tangible, statutorily-based employment discrimination claims.

It is worth noting that other federal courts have held that the ministerial exception applies to non-tangible employment discrimination claims, such as hostile work environment claims. *See, e.g.*, *Skrzypczak v. Roman Catholic Diocese of Tulsa*, 611 F.3d 1238 (10th Cir. 2010) (holding any Title VII claim, including hostile work environment, would implicate church's spiritual functions and, thus, courts cannot decide such claims without improperly interfering with churches' protected rights); *Preece v. Covenant Presbyterian Church*, 2015 U.S. Dist. LEXIS 52751, at *17-19 (D. Neb. April 22, 2015) (finding ministerial employee's sexual harassment claim barred by ministerial exception; holding "[t]he type of claim is irrelevant because any Title VII action brought against a church by one of its ministers will improperly interfere with the church's right to select and direct its ministers free from state interference" (internal quotations and citations omitted)) (collecting cases holding the same); *Ogugua v. Archdiocese of Omaha*, 2008 U.S. Dist.

---

[6]   Though not relevant here, this Court notes that the Third Circuit has spoken regarding contract-based employment claims and held that the ministerial exception applies to contract-based lawsuits only to the extent that any such claims are excessively, substantively tangled with religion.  "Thus, a court may resolve only [contract] disputes that turn on a question devoid of doctrinal implications and employ neutral principles of law to adjudicate." *Lee*, 903 F.3d 113 at 120 (internal quotations and citations omitted).

LEXIS 85317, at *14 (D. Neb. Oct. 22, 2008) (finding ministerial employee's sexual harassment claim barred by ministerial exception because claim was factually entwined with adverse employment actions, which the court could not review without excessive government entanglement with religion in violation of the First Amendment) ("This Court recognizes that religious employers . . . are free to discriminate on the basis of race, color, religion, sex , national origin, age, physical disability, and any other basis, with respect to the terms and conditions of employment of spiritual employees performing spiritual duties.  A court cannot interfere in such decisions without becoming entangled in matters of religion in violation of the First Amendment's Establishment Clause.").  This Court finds these decisions persuasive.

In conclusion, this Court finds that the ministerial exception bars all of Plaintiff's employment discrimination claims.  Therefore, this Court need not address Defendant's remaining arguments regarding the statute of limitations and sufficiency of Plaintiff's fact pleading.

**CONCLUSION**

For the reasons set forth herein, Defendant's motion to dismiss is granted, and all of Plaintiff's claims against Defendant are dismissed.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, U.S.D.C. J.